[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CONCERNING POST-JUDGMENT MOTIONS
The parties in this action were divorced pursuant to a decree of the Family Court of Vermont, which was issued on May 14, 1997.
On February 22, 2001, the Plaintiff filed the Vermont judgment with this Court, in accordance with the provisions of Connecticut General Statute § 46b-71.[1]
The Defendant received notification of the filing, and appeared pro se on February 22, 2001.
The Defendant has filed the following post-judgment motions in this matter: a Motion for Modification of Child Support dated September 10, 2001 (Motion #121); a Motion for Contempt dated October 10, 2001 (Motion #123); a Motion for Modification of Child Support and the Elimination of Spousal Support dated January 16, 2002 (Motion #127); a Motion for Contempt dated January 16, 2002 (Motion #128); and a Motion for Contempt dated January 16, 2002 (Motion #129).[2]
The Attorney for the Minor Child also filed a Motion for Modification of Parenting Schedule dated January 19, 2002 (Motion #131).
The foregoing motions were heard by this Court during a contested, four-day hearing. The hearing dates were March 13, 2002, March 19, 2002, May 1, 2002 and July 12, 2002.
The Plaintiff was represented throughout the proceeding by her attorney. The Defendant represented himself. The minor children were represented by their court appointed counsel.[3]
The Court has carefully considered all of the evidence and testimony presented at hearing. The Court also had the opportunity to observe and consider the testimony and the demeanor of both parties. Both parties frequently answered questions in an evasive manner during the hearing. CT Page 9453 Unfortunately, the Court found that the testimony of both the Plaintiff and the Defendant often lacked credibility.
The Court will separately address its legal and factual findings pertaining to each of the six motions. The Court's rulings on the modification motions are based upon a preponderance of the evidence. The Court has applied a "clear and convincing evidence standard" in determining the Defendant's contempt motions.
 I. Motion for Modification of Child Support dated September 10, 2001 (Motion #121)
The parties have four children: Justin, whose date of birth is March 29, 1984; Adam, whose date of birth is May 22, 1985; Nathan, whose date of birth is June 7, 1989 and Luke, whose date of birth is May 17, 1991.
The Vermont court awarded "sole legal and physical responsibility for the four children" to the Plaintiff. The Defendant was ordered to pay $950.00 per month to the Plaintiff as support for the minor children and $300.00 per month to the Plaintiff for her maintenance. At the time of the divorce decree, the Plaintiff was on welfare.
The Defendant, who has a college degree and employment experience as an accountant, then earned $36,000 per year as the director of finance for a regional community action program.
On July 3, 2001, the court, (Presiley, J) issued orders modifying the original Vermont decree's alimony and child support orders.
The Plaintiffs July 3, 2001 financial affidavit indicated that she was receiving total net weekly income of $123 per week from Supplemental Social Security Income payments.
The Defendant's July 3, 2001 financial affidavit reflected gross weekly income of $1, 322 per week and net weekly wages of $1, 045 from employment as a truck driver. At the time of the July 3, 2001 hearing, the parties' three youngest children resided with the Plaintiff, and their oldest child lived with the Defendant.
On July 3, 2001, Judge Prestley modified the original decree and ordered the Defendant to pay $250 per week to the Plaintiff as support for the three children in her care.[4] She also ordered the Defendant to continue to pay the Plaintiff $300 per month as alimony.
In his September 10, 2001 Motion for Modification of Child Support (Motion #121) the Defendant alleged that the Plaintiff now has "the CT Page 9454 ability and capacity for employment" and that she "refuses to seek employment and provide financially to the support of her children."
The Defendant requests that the Court establish an imputed level of income for the Plaintiff and modify the existing child support order in accordance with her income capacity. The Defendant argues that prior to receiving her SSI benefits, the Plaintiff had been trained as a nurse's assistant, had worked for three doctors, and had also served as a school aid.
The evidence at the hearing established that the Plaintiff was seriously injured in an automobile accident in 1997. The Plaintiff applied for SSI in 1997. She was granted SSI benefits in 1999, with payments retroactive to the 1997 filing date. The Plaintiff testified that she suffers from Chronic Obstructive Pulmonary Disorder, Radicular Sympathetic Dystrophy and spinal maladies.
The Defendant's request for a finding of imputed income is apparently based on his belief that the Plaintiff previously worked and presently has the physical capacity to resume employment. The Defendant testified that he personally observed the Plaintiff perform household chores and operate a computer. Based on this, he believes that the Plaintiff is physically able to work at this time.
Neither side offered medical testimony or records pertaining to the Plaintiffs physical condition during this proceeding.
However, it was proven that the federal government has determined that the plaintiff is disabled and qualifies for SSI benefits. The Plaintiff has been receiving these disability payments retroactive from 1997 through the present time. Her medical status was recently re-evaluated by the Social Security Administration and the outcome of that evaluation is pending. Based upon the totality of the evidence presented at hearing, the court finds that the Defendant failed to prove by a preponderance of the evidence that the Plaintiff is malingering, or that she is presently able to earn income in excess of her governmental benefits. Accordingly, the Defendant has not proven a substantial change in the Plaintiffs circumstances. For that reason, his September 10, 2001 Motion to Modify (Motion #121) is hereby DENIED.
 II. Motion for Contempt dated October 10, 2001 (Motion #123)
This motion pertains to financial and legal documents and other personal papers which the defendant claims that the Plaintiff failed to return to him after being ordered to do so by the Court. CT Page 9455
The following additional facts are relevant to the Court's determination of this motion:
At some point after the Vermont divorce decree entered, both parties relocated to Connecticut and lived together in this state with the four minor children.
The evidence at hearing established that on March 29, 2000, the parties jointly purchased a home at 280 North Street in Windsor Locks, Connecticut. (Plaintiffs Exhibit 7). Although the parties cohabited, they apparently did not remarry.
On June 21, 2000, the Plaintiff quitclaimed her interest in 280 North Street to the Defendant. Thereafter, the parties' relationship deteriorated again and they became involved in domestic disputes. On March 21, 2001, a Family Violence Protective Order was issued at Superior Court G.A. 13 in Enfield. (Defendant's Exhibit E).
The order of the criminal court was issued against the Defendant, who had been arrested for an alleged act of domestic violence. The Defendant was ordered to have no physical contact with Leshe Blow anywhere, except during civil court proceedings, and to remain 500 feet away from her. The protective order also required that the Defendant was not to enter any dwelling occupied by the victim, including 280 North Street, Windsor Locks, Connecticut when victim has occupancy per order of the Family Court." (Defendant's Exhibit E).
For a period of time, the parties alternated living at 280 North Street with the minor children. Thereafter, the Plaintiff vacated the premises and established a separate residence with the three minor children. The Defendant resumed occupancy of 280 North Street and lives there with the oldest child, Justin.
The Defendant complains in this motion that the Plaintiff has refused to return his legal, financial and personal documents which she allegedly took when she left 280 North Street. At a hearing prior to the commencement of this proceeding, the Defendant claimed that those documents were necessary for the preparation of his case.
On September 26, 2001, this Court ordered the Plaintiff to turn over any financial or legal documents removed from the 280 North Street residence to her lawyer within seven days. The Court also ordered that the Plaintiffs attorney was to send the Defendant copies of those documents within 10 days.
The Defendant filed the instant motion on October 10, 2001. The CT Page 9456 Defendant alleged that the Plaintiff failed to forward any documents in accordance with the Court's order. In the contempt motion, the Defendant requests, inter alia, reimbursement of a $255.50 bill for copies of checking account statements from his bank. (Defendant's Exhibit B).
The evidence at hearing established that at some point after October 10, 2001, but prior to the first day of hearing on March 13, 2002, the Defendant received a package of legal and financial documents from the Plaintiff. Copies of these papers were not introduced into evidence. However, the Plaintiff introduced a two-page document which listed the papers and books that she returned to the Defendant through her counsel (Plaintiffs Exhibit 10).
At hearing, the Defendant alleged that he is still missing "a file cabinet full" of documents and papers.
The Plaintiff contends that she retured the documents that were in her possession, and that any items which the Defendant claims are still missing were left at 280 North Street when she vacated the premises.
Based on the facts presented during hearing, the Court finds that the Defendant did not prove by clear and convincing evidence that the Plaintiff willfully destroyed or withheld the documents as alleged in the motion for a finding of contempt. Although the Plaintiff did not comply with the Court's order that the documents be returned to the Defendant within 10 days, the items which the Defendant received from the Plaintiff were forwarded prior to the commencement of this hearing in March 2002.
Accordingly, the Defendant's Motion for a finding of Contempt dated October 10, 2001 (Motion #123) is hereby DENIED.
 III. Motion for Modification of Child Support and the Elimination of Spousal Support dated January 16, 2002 (Motion #127)
The Defendant requests in this motion that the Court reduce his weekly child support payments and eliminate his periodic alimony obligation to the Plaintiff.
The Defendant advanced the following reasons for modification:
1. A substantial increase in his medical insurance cost;
 2. A change in his federal income tax status for the year 2002 and future years;
3. A reduction in his tax exemptions for the year 2002 and future years; CT Page 9457
4. The fact that he has had no increase in earnings since the child support order was established;
5. The substantial legal expenses which he has incurred to defend various contempt motions filed by the Plaintiff; and
6. Alleged "malicious acts of the Plaintiff' which the Defendant claims damaged his ability to earn a living and provide for his dependent children.
In addition to the foregoing, during hearing the Defendant claimed that he is currently working between 90 and 100 hours per week and that his child support should be based solely on what he earns for a 52-hour work week.
As noted above, although the Defendant currently works as a truck driver, he was formerly an accountant. He claims that he has had extensive experience preparing federal income tax returns.
Despite that fact, there was a paucity of credible evidence presented at hearing regarding the financial impact of the Defendant's current federal income tax and exemption status. The Defendant did not prove that these tax considerations warranted a modification. Accordingly, the Court finds that the Defendant did not meet his burden of establishing a substantial change in his financial circumstances based on those claims.
The Defendant's motion noted that he has not received any increase in his earnings since the child support order was established in July 2001. (emphasis added). The Defendant was employed as a truck driver in 2001 and continues to work in that capacity.
The Defendant conceded at hearing that his earnings have not decreased since the July 3, 2001 financial orders were issued. The financial affidavits and other evidence confirm that there has not been a substantial change in the income of either party. The Defendant's July 3, 2001 financial affidavit reflected gross weekly income of $1, 332 ($69, 264 per annum) and net weekly income of $1, 045 ($54, 340 per annum). The Defendant's 2001 W-2 form reflected gross wages of $67, 132.65 (Plaintiffs Exhibit 3).
One of the financial affidavits which the Defendant submitted to the Court during March, 2002 indicated that he is receiving gross income of $1,322 per week ($68,744 per annum) and net weekly income of $953. However, the sum of $70 per week for alimony was deducted from the Defendant's gross wage to arrive at that net figure on his affidavit. The CT Page 9458 Defendant's actual net wage, per that affidavit, should be $1,023 per week ($53,196 per annum).
Furthermore, a wage stub introduced by the Defendant indicated that his year-to-date gross salary as of March 14, 2002, was $17, 516.83 (Defendant's Exhibit D). Utilizing that figure, the Defendant's average gross weekly wage for the first eleven weeks of the current year was $1,592.43.
Based on all of the foregoing, the Court finds that there has been no substantial decrease in the Defendant's net weekly wage since the current child support orders were established in July, 2001.
At hearing, the Defendant vigorously asserted that his total net weekly wage should not be used in establishing his child support obligation, since he claims to work between 90 and 100 hours per week as a truck driver to earn his weekly net salary.
The Defendant contends that his average hourly wage as a truck driver is $14.00 per hour and that his support should be based only a 52 hour work week, as suggested in the state child support guidelines. He alleges that his support payment should be calculated on a gross wage of $728 per week (52 hours X $14.00 per hour = $728).
The Court notes that when the Vermont court ordered the Defendant to pay child support in the amount of $950 per month and spousal maintenance in the amount of $300 per month, the Defendant was earning gross salary of $36,000 per year from his employment as a financial officer for a community action program.
The Defendant was employed as a truck driver when Judge Prestley's orders were issued on July 3, 2001. He stills works as a driver, and is employed by a company headquartered in Burlington, Massachusetts.
The Defendant testified about his weekly work schedule, and the formula by which his compensation is determined. He did not submit credible supporting evidence — such as business records from his employer or the testimony of his supervisors or colleagues — verifying his claims concerning the length of his work week and the amount of his hourly wages. He did not prove that there has been a substantial change in his work schedule since July 2001.
Evidence established that the Defendant has two days off from work per week. Since the Defendant claims that he works between 90 and 100 hours per week to generate his net weekly salary, this would mean that he is working an average of 18-20 hours per day on each of the five days that CT Page 9459 he drives his truck.
The Court does not credit the Defendant's testimony about the number of hours that he works, and his average hourly wage.
The Court finds that the Defendant has not proven that his support obligation should be computed based on gross income of $728 per week, or that his current support obligation is excessive because it is based on a work week that substantially surpasses the number of hours suggested by the child support guidelines.
The Court also finds that there has been no substantial change in the amount of the Plaintiffs weekly income. The SSI benefit which she receives ($126.74 per week) is oniy slightly higher than the amount that she was receiving in July 2001.
The Court did not find from the evidence presented that the cost of the Defendant's medical insurance constitutes grounds for modification.
Finally, the Court is not persuaded that malicious acts or contempt motions by the Plaintiff have prevented the Defendant from earning a living, or have been the sole cause of his legal expenses. The Defendant was arrested twice in 2001 for alleged domestic crimes, and he is the subject of a Family Violence Protective Order issued in the criminal court. Furthermore, the Court notes that five motions filed by the Defendant were the major focus of this four-day hearing.
The Defendant has not proven by a preponderance of the evidence either that there has been a substantial change in the financial circumstances of either party since the date of the last financial orders, or that his current child support obligation exceeds guidelines and should be reduced for that reason.
Accordingly, the Defendant's Motion to Modify Child Support and Eliminate Spousal Support (Motion #127) is hereby DENIED.
 IV. Motion for Contempt dated January 16, 2002 (Motion #128)
The Defendant claims in this Motion that on July 3, 2001, the Court instructed the Plaintiff to refrain from removing any more of the Defendant's personal possessions from 280 North Street and to return several items that she allegedly removed from the home. The Defendant contends that the Plaintiff violated this order by continuing to remove the Defendant's personal possessions from the residence and by causing damage to the premises when she vacated said property. CT Page 9460
A search of the Court file reveals no written orders under date of July 3, 2001 which mention the removal of personal property, or a prohibition against committing waste. If the Court made verbal orders on that date, they are not annotated in the Court's file, and the Defendant did not produce a transcript supporting that claim during this hearing.
The Court's file does reflect a written agreement signed by the parties and counsel and ordered by the Court on March 12, 2001. That order states that: "Neither party shall remove anything from the house other than their own clothing, personal products, individually addressed mail, documents and personal papers." The order also states that "Both parents shall leave the dwelling as they found it." The Court assumes that the Defendant's January 16, 2002 Motion for Contempt refers to the March 12, 2001 order.[5]
The Defendant submitted a list of damages to the 280 North Street property for which he claims Plaintiff is responsible (Defendant's Exhibit D). He alleged the damages totaled $2,700. One entry listed damages totaling $1,000 for "vinyl siding broken by children using paint ball guns." (Defendant's Exhibit D). Significantly, that list refers to damages done at 280 North Street while those premises "were in the possession of Leshe Blow." (Defendant's Exhibit D). The Defendant did not prove by clear and convincing evidence that the Plaintiff caused the damages.
At hearing the Defendant also submitted a list of items which he claimed had been removed from the home by the Plaintiff (Defendant's Exhibit C). Here, too, based on the evidence presented, the Court cannot find by clear and convincing evidence that the Plaintiff contemptuously took that personal property. Additionally, in Defendant's Exhibit C, the Defendant offered his opinion about the value of the missing items. He did not submit credible supporting documentation — such as receipts or replacement estimates — concerning the value of the items which were reportedly removed by the Plaintiff.
The Plaintiff and the Defendant gave conflicting testimony concerning both the damage at 280 North Street and the missing personal property. As noted above, the court found that the testimony of both parties often lacked veracity, and this impeded the court's efforts to make factual findings on this issue.
The Court finds that the Defendant has failed to prove by clear and convincing evidence that the Plaintiff is in contempt of court orders with respect to the alleged removal of the Defendant's personality and the alleged damage at 280 North Street. The Defendant's Motion for Contempt dated January 16, 2002 (Motion #128) is hereby DENIED. CT Page 9461
 V. Motion for Contempt dated January 16, 2002 (Motion 4129)
In this motion, the Defendant claimed that on May 24, 2001, the Court ordered the Plaintiff to refrain from calling the police unless there was a legitimate emergency. In said motion, the Defendant alleged that the "Plaintiff called the Windsor Locks Police after seeing the Defendant at the ball park and had the Defendant arrested for an alleged violation of a restraining order."
As noted previously, a Family Violence Protective order was issued against the Defendant on March 21, 2001 in a criminal proceeding at Superior Court G.A. 13 in Enfield. (Defendant's Exhibit B). The Court infers that this is the order which the Defendant is alleged to have violated during the incident described above.
The Defendant did not prove during this proceeding that there was no probable cause for his arrest on the charge of violating the protective order. He did not establish that the criminal case resulting from his arrest had been resolved in his favor. Although he denies any guilt, the Defendant did not prove by clear and convincing evidence that the Plaintiff willfully and contemptuously violated the family court's order of May 24, 2001. Accordingly, the Defendant's Motion for Contempt dated January 16, 2002 (Motion #129) is hereby DENIED.
VI. Motion for Modification of Parenting Schedule dated January 19, 2002. (Motion #131)
Counsel for the minor children filed a motion under date of January 19, 2002, seeking modification of the existing parenting orders. In that motion, the attorney for the children, noted that: "Due to a change in the Defendant's work schedule and other concerns expressed by my clients, a different schedule would be more appropriate for the minor children."
On March 19, 2002 the attorney for the minor children submitted proposed custody and parenting orders.
During this hearing, the Court instructed the parties to file any objections or comments with respect to the parenting schedule proposed by the attorney for the minor children within five days after July 12, 2002.
The Plaintiff did not file any objections or comments with the Court and is believed to be in accord with the attorney for the minor children's suggestions. On July 17, 2002, the Defendant filed a pleading CT Page 9462 in which he objected to only one of the 13 recommendations that were made by the aftorney for the minor children. Based on the tenor of the Defendant's submission to the Court on July 17, 2002 the Court finds that the Defendant agrees with all of the attorney for the minor children's proposed parenting orders, except Item #9.
Accordingly, in accordance with the apparent agreement of the parties as to Items 1 through 8 and 10 through 13 of March 19, 2002 proposed orders, the Court finds that said orders are in the best interest of the minor children. The Court reopens and modifies the judgment and enters the following custody and parenting orders:
A. The parties shall continue to have joint legal custody of the three minor children: Adam, Nathan, and Luke.[6]
B. Nathan and Luke shall be with the Defendant each Wednesday from after school until 8:30 p.m.; and in the summer on Wednesdays, or any Wednesdays off from school, from 11:00 a.m. until 9:30 p.m.; and also on Saturday from 10:00 a.m. until Sunday at 9:45 a.m. every other weekend. Both parties must be on time for the pick up and drop off.
C. Adam shall see the Defendant if and when he chooses and shall make all of the arrangements directly with the Defendant.
D. The parties shall exchange the children at McDonald's unless the children are at a ball game or other team or school activity at the scheduled time of the pick up or drop off, in which case the transition shall be at that activity's location, and both children are to be there whether involved in the activity or not.
E. The Plaintiff is to ensure that the three children attend school every day unless they are seriously ill, that they are in school on time, that they complete their homework assignments, that they continue to see the school social workers and/or school psychologist on a regular basis and that they get to their therapy appointments. Furthermore, she is to monitor any of their friends who come over so as to keep her own children as safe as possible.
F. The Defendant shall closely supervise Nathan and Luke when the two children are in his household. He shall also monitor any of their friends who come over so as to keep his own children as safe as possible.
G. The parties shall share holidays as follows each year:
a. Easter Sunday — Defendant has the children until 2:00 p.m. and if it is not his weekend then he picks the children at 10:00 a.m. CT Page 9463
b. Thanksgiving — Defendant has the children from Wednesday after school until 2:00 p.m. on Thanksgiving Day;
c. Christmas Eve — Plaintiff has the children all day until 2:00 p.m. on Christmas Day;
d. Christmas Day — Defendant has the children from 2:00 p.m. until 2:00 p.m. on December 26;
H. The Defendant shall have the boys on Father's Day even if it is not his Sunday and the Plaintiff shall have the boys with her on Mother's Day even if it is the Defendant's day to be with the boys. The Defendant shall also have the boys from 11:00 a.m. until 9:30 p.m. on his week day(s) off during the February and April school vacations, if the Defendant has any week days off during those weeks.
I. Each parent shall be entitled to complete, detailed information from any pediatrician, general physician, dentist, consultant or specialist attending the children for any reason whatsoever and is to be furnished with copies of any reports given by these professionals to the other parent. Each parent shall inform the other of any emergency or of any doctor or dentist they take the children to for medical attention.
J. Each parent shall be entitled to complete detailed information from any teacher or school giving instructions to the children or which the children may attend and is to be furnished with copies of all reports given to the other parent. Both parents' names, addresses and telephone numbers are to be listed on the children's' school records.
K. Both parties shall stop making any negative comments about the other parent to the children in front of the children, or within earshot of the children. The Defendant shall stop speaking about the Plaintiffs sisters to the children, or in front of the children, or within earshot of the children.
L. Neither party shall do anything which would estrange the children from the other parent or grandparents; nor which would injure the opinion of the children as to the other parent or grandparents or which would impair the natural development of the children's' love and respect for each of the parents and grandparents.
The parties did not agree upon a proposed custody and parenting order dealing with summer vacation. That proposed order was set forth as Item #9 in the attorney for the minor children's proposal, and is not listed above. The Defendant is requesting a revision of that proposed order to CT Page 9464 accommodate his work schedule, which runs Sunday through Saturday. In addition, the Defendant is requesting the option to take a vacation in the winter or the spring that would coincide with the children's' winter or spring vacations. The Court will defer from entering orders with regard to that issue. The Court directs that the parties and the attorney for the minor children are to meet to determine if they can resolve the issue without a hearing. If the parties are able to reach an agreement, the parties may file a written stipulation concerning the father's vacation access that may be entered as an order of this court. If the parties are unable to agree, the parties may make a motion for referral of that issue to the Family Relations Office for mediation and/or evaluation.
In accordance with the foregoing, the Attorney for the Minor Child's Motion for Modification Parenting Plan is hereby GRANTED.
 VII. Miscellaneous Order
Counsel for the Plaintiff previously moved for permission to withdraw, citing a breakdown in the attorney-client relationship. On August 14, 2001, the Court (Gruendel, J) denied that motion without prejudice. Counsel for the Plaintiff represented her client vigorously throughout this proceeding and indicated that she expended many pro bono hours in doing so.
At the conclusion of this hearing, counsel for the Plaintiff orally renewed her motion to withdraw as counsel. Although this Court is aware that the Defendant has recently filed additional post-judgment motions that may be heard in the future, the Court finds, under the circumstances, that counsel should be permitted to withdraw at this time. Accordingly, the motion by Plaintiffs attorney to withdraw as her counsel is hereby GRANTED.
SO ORDERED:
By the court:
Dyer, J.